# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MICHIGAN

In re:

**THOMAS C. MILLER and**  Case No. 08-01545
**DENISE E. MILLER,**
          Debtors,  Chapter 7

Hon. Scott W. Dales

_____/

**IRWIN SOLOMON,** a Michigan resident, and
**IRWIN SOLOMON ROTH IRA**
          Plaintiff,

vs.  Adv. Proc. No. 08-80222

**THOMAS C. MILLER and**  Hon. Scott W. Dales
**DENISE E. MILLER,**
          Defendants.

_____/

Lara Fetsco Phillip (P67353)
Joseph R. Sgroi (P68666)
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7570
jsgroi@honigman.com

Susan Jill Rice (P63035)
Brandt Fisher Alward & Roy, P.C.
1241 East Eighth Street
PO Box 5817
Traverse City, MI 49696-5817
(231) 941-9660 ext. 129
jrice@bfarlaw.com
*Attorneys for Plaintiff*

_____/

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## **Table of Contents**

Table of Contents ................................................................................................................1

Index of Authorities ...........................................................................................................2

Issues Presented ..................................................................................................................4

Controlling and Most Appropriate Authorities ..................................................................5

I.       Introduction ...........................................................................................................6

II.      Factual Background ...............................................................................................7

         A.       The Parties ..................................................................................................7

         B.       The Miller Debt and Term Agreement and the Miller Solomon Modified
                  Agreement ...................................................................................................8

         C.       The Snider Payment Agreement .................................................................9

         D.       Discharge of Mortgage ...............................................................................9

         E.       Miller Solomon Consulting Agreement ....................................................10

         F.       The Adversary Proceeding.........................................................................10

III.     The Summary Judgment Standard ........................................................................13

IV.      Argument ...............................................................................................................14

         A.       All of Plaintiffs' Requests to Admit Are Deemed Admitted ....................14

         B.       The Admissions Fully Satisfy All Factual and Legal Proofs Necessary for
                  Entry of Judgment as to Liability and Nondischargeability ......................16

                  1.       The Miller Debt and Term Agreement .........................................16

                  2.       The Miller Solomon Modified Agreement ...................................18

                  3.       The Snider Payment Agreement ...................................................19

                  4.       Discharge of Mortgage on Defendants' Primary Residence.........20

                  5.       Miller Solomon Consulting Agreement .......................................21

V.       Calculation of Liability .........................................................................................22

VI.      Conclusion .............................................................................................................23

## <u>Index of Authorities</u>

**CASES**

*American Auto. Ass'n v. AAA Legal Clinic*,
    930 F.2d 1117, 1120 (5th Cir. 1991) ......................................................................15

*American Tech. Corp. v. Mah*,
    174 F.R.D. 687, 689 (D. Nev. 1997)........................................................................15

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)............................................................................................13, 14

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...................................................................................................13

*Federal Trade Comm'n v. Medicor, LLC*,
    217 F. Supp. 2d 1048, 1053 (C.D. Cal. 2002) ........................................................15

*Freed v. Plastic Packaging Materials, Inc.*,
    66 F.R.D. 550, 552 (E.D. Pa. 1975)........................................................................16

*Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n*,
    465 F.3d 1102, 1112 (9th Cir. 2006) .......................................................................15

*Turk v. CitiMortgage*,
    No. 05-70386, 2005 U.S. Dist. LEXIS 18355, *9
    (E.D. Mich. 2005) (Duggan, J.) ...............................................................................14

*Universal City Studios Productions LLP v. Bigwood*,
    441 F. Supp. 2d 185, 187 (D. Me. 2006) ................................................................16

*Weva Oil Corp. v. Belco Petroleum Corp.*,
    68 F.R.D. 663, 667 (N.D. W. Va. 1975) .................................................................15

**STATUTES**

11 U.S.C. § 523(a)(2)(A) ......................................................... 6, 10, 17, 19-23

11 U.S.C. § 523(a)(2)(B) ......................................................... 6, 10, 17, 19-23

11 U.S.C. § 523523(a)(6)......................................................... 6, 10, 17, 19-23

**COURT RULES**

Fed. R. Civ. P. 56(c) ........................................................................................13

Fed. R. Civ. P. 56(e) ........................................................................................14

Fed. R. Civ. P. 36(a)(1) .................................................................................6, 14

Fed. R. Civ. P. 36(a)(3) .................................................................................6, 14

Fed. R. Civ. P. 36(b) ........................................................................................15

## **Issues Presented**

I.    As Defendants have been deemed to have admitted all of Plaintiffs' requests to admit, such admissions establish all factual and legal proofs necessary to establish liability, and there being no material issues of fact or law remaining, should the Court grant summary judgment in Plaintiffs' favor on the issue of liability?

Plaintiffs say: **Yes**

II.    As Defendants have been deemed to have admitted all of Plaintiffs' requests to admit, which admissions establish all factual and legal proofs necessary to establish nondischargeability under the Bankruptcy Code, and there being no material issues of fact or law remaining, should the Court grant summary judgment in Plaintiffs' favor on the issue of nondischargeability?

Plaintiffs say: **Yes**

### Controlling and Most Appropriate Authorities

- Fed. R. Civ. P. 36(a)(3)

- *American Auto. Ass'n v. AAA Legal Clinic*, 930 F.2d 1117, 1120 (5th Cir. 1991)

- *Freed v. Plastic Packaging Materials, Inc.*, 66 F.R.D. 550, 552 (E.D. Pa. 1975)

## I.    <u>Introduction</u>

In this case, Plaintiffs Dr. Irwin Solomon ("<u>Solomon</u>") and Irwin Solomon Roth IRA ("<u>Solomon Roth IRA</u>," and together with Solomon, collectively "<u>Plaintiffs</u>") seek both a judgment against Thomas C. Miller and Denise E. Miller (collectively, the "<u>Millers</u>" or "<u>Defendants</u>"), jointly and severally, based on the defaulted loans made by Plaintiffs to Defendants and an order deeming such indebtedness nondischargeable under sections 523(a)(2)(A), 523(a)(2)(A), and/or 523(a)(6) of the Bankruptcy Code (11 U.S.C. § 101 *et seq*.). Defendants deny liability and that the debts should be nondischargeable.

Plaintiffs filed with the Court and served on Defendants their First Set of Interrogatories, Requests for Production of Documents, and Requests to Admit to Defendants ("<u>Discovery Requests</u>") pursuant to Federal Rule of Civil Procedure 36(a)(1) on March 16, 2009.  Defendants have failed to respond to Plaintiffs' Discovery Requests, including Plaintiffs' requests to admit, and such responses are now long past due.   Pursuant to the mandatory and unambiguous language of Federal Rule of Civil Procedure 36(a)(3), all of Plaintiffs' requests to admit have been deemed admitted.  Out of an abundance of caution, Plaintiffs have filed a motion seeking affirmative relief from the Court deeming all Plaintiffs' requests to admit admitted contemporaneously with filing this Motion.

Plaintiffs' requests to admit, which are all deemed admitted, fully satisfy all factual or legal proofs necessary for this Court to enter a judgment in Plaintiffs' favor as to liability and to enter an order holding such judgment and the underlying indebtedness nondischargeable under section 523 of the Bankruptcy Code.  Because no issues of material fact or law exist, Plaintiffs are entitled to summary judgment.

## II.    <u>Factual Background</u>

**A.    The Parties**

Solomon is a retired podiatrist who contributed a substantial amount of his earnings while in active practice to a pension fund known as the Irwin H. Solomon D.P.M., P.C. Profit Sharing Plan (the "<u>Solomon Profit Sharing Plan</u>").  Upon his retirement, the assets from the Solomon Profit Sharing Plan were transferred to an IRA (the "<u>Solomon IRA</u>").

At various times, the Millers fraudulently induced Solomon to lend substantial sums of money to them personally and/or to their company, North American Equities, in connection with, among other things, purported real estate developments, including a development called the Governor's Club (also referred to as the Governor's Collection) in Okemos, Michigan, by misrepresenting both their ability and their intent to repay such loans.  Certain of these sums were loaned to the Millers and/or North American Equities from Solomon personally, including from amounts he withdrew from his traditional IRA, and others were loaned from the Solomon Profit Sharing Plan.  To secure the repayment of the loans, the Millers executed various promissory notes under which the Millers promised to timely repay Solomon, the Solomon Profit Sharing Plan, and/or the Solomon IRA.

On or around December 17, 1998, Solomon converted certain assets from the Solomon IRA to the Solomon Roth IRA, including five of the original loans made by the Solomon Profit Sharing Plan to the Millers – Miller Loan #1, Miller Loan #2, Miller Loan #3, Miller Loan #4, and Miller Deed of Trust.  Fiserv Trust Company (formerly First Trust Corporation) assigned to Solomon the right to assert all claims relating to assets in the Solomon Roth IRA, including specifically its rights related to Miller Loan #1, Miller Loan #2, Miller Loan #3, Miller Loan #4, and Miller Deed of Trust.

**B.**     **The Miller Debt and Term Agreement and the Miller Solomon Modified Agreement**

On or around June 18, 2001, the Millers and Solomon executed an agreement entitled the "Miller Debt and Term Agreement," whereby the Millers acknowledged that they owed Solomon a total of $3,957,827 through July 31, 2001.  In the Miller Debt and Term Agreement, the parties structured the repayment of these amounts to Solomon and the Solomon IRA, including timing and interest.  The Millers signed the Miller Debt and Term Agreement as personal guarantors, thereby agreeing, in their personal and individual capacities, to repay Solomon the full amount of the indebtedness, plus interest.  The Miller Debt and Term Agreement is attached as **Exhibit A**.

At or around the time of the execution of the Miller Debt and Term Agreement, the Millers also entered into the "Miller Solomon Modified Agreement," under which the Millers acknowledged that North American Equities owed Solomon an additional $912,252 that Solomon had loaned and/or invested with North American Equities from the Solomon IRA and whereby Solomon agreed to accept, in lieu of interest through July 31, 2001 on $774,000 of the additional $912,252 owed, three lots of his choosing from the Governor's Collection real estate development in Okemos, Michigan, or any other future real estate project undertaken by the Millers.  A copy of the Miller Solomon Modified Agreement is attached as **Exhibit B**.

At all relevant times, the Millers were aware that Solomon had withdrawn the majority of the funds he was lending from his pension or IRAs and that, if Solomon was not timely repaid the funds he loaned from the Solomon IRA, Solomon would incur substantial tax penalties and could not return the funds to his IRA.

The Millers have failed and refused to make any of the payments or transfer ownership of any property to Solomon as required under the Miller Debt and Term Agreement and the Miller Solomon Modified Agreement despite Solomon's repeated requests that they do so.

**C.      The Snider Payment Agreement**

On or about May 15, 1999, Thomas Miller fraudulently induced Solomon to obtain a loan from Charles Snider for Thomas Miller's benefit by verbally representing to Solomon that he would never have to repay any of the loaned money to Snider.  In reliance upon Thomas Miller's representations, Solomon obtained and personally guaranteed repayment of the loan from Snider for Thomas Miller's benefit.  Thomas Miller ultimately failed to repay the loan to Snider and as a result, Mr. Snider brought a lawsuit against Solomon seeking payment.

On September 22, 2005, Solomon and Thomas Miller entered into an agreement pursuant to which Thomas Miller agreed to pay the total liability owed to Mr. Snider under the loan (the "Snider Payment Agreement").  A copy of the Snider Payment Agreement is attached as **Exhibit C**.  Thomas Miller did not honor his obligations under the Snider Payment Agreement and failed to make payment to Mr. Snider.

Ultimately, Mr. Snider obtained a judgment against Solomon in excess of $90,000 and, as a result, Solomon was left with no choice but to enter into a settlement agreement with Mr. Snider, whereby Solomon agreed to pay Mr. Snider a total of $98,279, which Solomon also had to withdraw from his IRA account because he had no other funds with which to pay Mr. Snider. As a result, Solomon incurred significant tax penalties.

Mr. Miller has failed and refused to honor his obligations to Solomon under the Snider Payment Agreement despite Solomon's repeated demands that he do so.

**D.      Discharge of Mortgage**

The Miller Debt and Term Agreement and the underlying loans to same were securitized in part by a mortgage on the Millers' primary residence of the Millers in Grosse Pointe, Michigan.

On or around August 24, 2001, Defendant Thomas Miller fraudulently induced Solomon to execute two discharges of mortgage, one on behalf of Irwin Solomon in his individual capacity and one on behalf of Irwin Solomon as Trustee of the Solomon Profit Sharing Plan, by promising Solomon that any proceeds from the sale would be paid to the Irwin Solomon Profit Sharing Plan and that the Millers would convey to Solomon a mortgage on a residence in Charlevoix County that they were purchasing as their new primary residence.

The Millers have failed to pay any monies from the sale proceeds to Solomon or to the Solomon Profit Sharing Plan and have failed to grant any such mortgage to Solomon.

**E.    Miller Solomon Consulting Agreement**

On or about April 27, 1995, Thomas Miller fraudulently induced Solomon to enter into a consulting agreement whereby, in consideration of consulting services rendered by Solomon, Thomas Miller would assign to Solomon a 25% beneficial ownership interest in all future real estate ventures and in any entity or entities formed to pursue those ventures (the "Miller Solomon Consulting Agreement").   A copy of the Miller Solomon Consulting Agreement is attached as **Exhibit D**.  Thomas Miller has failed to assign Solomon any interest in any of his real estate ventures or in any entity formed to pursue those ventures – although it is Solomon's understanding that Tom Miller is involved in numerous such real estate ventures.

**F.    The Adversary Proceeding**

Plaintiffs filed their Complaint Objecting to Dischargeability Under 11 U.S.C. § 523 (the "Complaint") on May 23, 2008 seeking both a judgment against Defendants and an order deeming such indebtedness nondischargeable under sections 523(a)(2)(A), 523(a)(2)(A) and 523(a)(6) of the Bankruptcy Code.  A copy of the Complaint is attached as **Exhibit E**.

Plaintiffs filed with the Court and served on Defendants their First Set of Interrogatories, Requests for Production of Documents, and Requests to Admit to Defendants ("Discovery

Requests") on March 16, 2009.  A copy of Plaintiffs' Discovery Requests is attached as **Exhibit F** and a copy of the Corrected Certificate of Service of Plaintiffs' Discovery Requests is attached as **Exhibit G**.  The Discovery Requests included forty-four Requests for Admission (the "Requests to Admit").

Defendants' responses to Plaintiffs' Discovery Requests were due under Federal Rule of Civil Procedure 36 (incorporated by Federal Rule of Bankruptcy Procedure 7036) on April 15, 2009 (the "Response Deadline").[1]  Defendants' counsel has requested, and Plaintiffs' counsel has consented to, three separate extensions to the Response Deadline, all of which were approved by orders of this Court.  Copies of the stipulations to extend the Response Deadline and corresponding orders are attached as **Exhibits H, I, and J**, respectively.  The last extension of the Response Deadline consented to by Plaintiff or approved by the Court expired on July 15, 2009.

On August 17, 2009 – more than five months after Plaintiffs' issued their Discovery Requests and thirty-three days since the expiration of the Response Deadline – Plaintiffs' counsel informed Defendants' counsel that, absent the Defendants providing meaningful responses to Plaintiffs' Discovery Requests by 9:00 a.m. on August 19, 2009, Plaintiffs intended to promptly file a motion to deem all Requests to Admit admitted.  A copy of the e-mail from Joseph Sgroi to Wallace Tuttle dated August 17, 2009 is attached as **Exhibit K**.  Mr. Tuttle responded that he intended to withdraw his representation of Defendants in this Adversary Proceeding and forwarded Plaintiffs' counsel's email to Mr. Lawrence Hanson, who he indicated would be handling the matter.

---

[1] The Federal Rules of Civil Procedure are referred to herein as the "Rules" and the Federal Rules of Bankruptcy Procedure are referred herein as the "Bankruptcy Rules."

Over the course of approximately the following two weeks, Plaintiffs and Defendants and their respective counsels engaged in a number of conversations surrounding a proposed settlement to this matter and Plaintiffs' counsel drafted and sent to Defendants' counsel a settlement agreement incorporating the terms of such discussions on September 3, 2009. Since that time, despite numerous phone calls and e-mails to Defendants' counsel, Plaintiffs' counsel has received no response whatsoever to the proposed settlement agreement or any other communication from Defendants' counsel.

Pursuant to this Court's Third Pretrial Order dated March 18, 2009 (the "<u>Third Pretrial Order</u>"), all discovery in this Adversary Proceeding was to be completed by September 17, 2009, witness and exhibit lists were to be filed and exhibits exchanged by September 22, 2009, and dispositive motions, if any, must be filed on or before September 25, 2009. Plaintiffs' case is set for trial on October 20, 2009.

The Third Pretrial Order obligates the parties to comply with all discovery deadlines notwithstanding the potential for a settlement:

> Because most civil disputes are resolved by settlement, the parties are directed to commence and continue settlement negotiations up to the date of trial, if necessary. The expectation, therefore, is that at various times during this litigation, the parties will be 'in serious settlement negotiations,' 'close to settlement,' etc. However, the mere fact that the parties are negotiating, even if they are very close to settling, does not excuse strict compliance with the schedule adopted in this Pretrial Order. Specifically, counsel are warned that the failure to file witness or exhibit lists, **or to comply with discovery deadlines**, may not be excused on the ground that counsel thought the case was settled unless the settlement has already been 'signed, sealed and delivered,' the court has received written notification that the case has been settled, or the settlement has been placed on the open record and acknowledged by all settling parties.

Third Pretrial Order, page 3 (emphasis added). A copy of the Third Pretrial Order is attached as **Exhibit L**.

In addition to filing and serving their Discovery Requests, Plaintiffs have filed their witness and exhibit lists, served copies of their proposed exhibits on Defendants' counsel and the Court and, concurrently with filing their Motion for Summary Judgment, have filed a motion seeking affirmative relief from the Court deeming all Plaintiffs' requests to admit admitted.  As of the filing of this Motion, Defendants have not responded to Plaintiffs' Discovery Requests, including the Requests to Admit, filed their witness and exhibit lists or, to Plaintiffs' knowledge, circulated any proposed exhibits to Plaintiffs.

### III.    The Summary Judgment Standard

Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one which "might affect the outcome of the suit under the governing law . . . ."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  That burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson,* 477 U.S. at 249-50 (citations omitted); see also Fed. R. Civ. P. 56(e).  In evaluating a

motion for summary judgment, the evidence should be viewed in the light most favorable to the

non-moving party.  *Id.* at 255.

## IV.    <u>Argument</u>

**A.    All of Plaintiffs' Requests to Admit Are Deemed Admitted**

Rule 36 provides that during discovery a party may serve on another party a written

request to admit the truth of any matter within the general scope of discovery relating to (A)

facts, the application of law to fact, or opinions about either, and (B) the genuineness of any

described documents.  Fed. R. Civ. P. 36(a)(1).

Rule 36 unambiguously provides in mandatory terms that, if a party fails to respond to a

request to admit, the request is admitted:

> A matter **is admitted** unless, within 30 days after being served, the
> party to whom the request is directed serves on the requesting
> party a written answer or objection addressed to the matter and
> signed by the party or its attorney.

Fed. R. Civ. P. 36(a)(3) (emphasis added).  If the party who has been served with a request to

admit does not serve a timely response – that is, if the response is not submitted within thirty

days of service or within the time stipulated to between the parties and ordered by the court – the

requested matter is deemed admitted.  *See,* e.g, *Turk v. CitiMortgage*, No. 05-70386, 2005 U.S.

Dist. LEXIS 18355, *9 (E.D. Mich. 2005) (Duggan, J.) ("As Plaintiff has failed to answer or

object to Defendant's requests for admission, the Court will deem the matters within the requests

admitted pursuant to Rule 36(a)").

Plaintiffs served Defendants with forty-four Requests to Admit.  See **Exhibit F**, pages

11-16.  Defendants' answers were initially due April 15, 2009.  Defendants requested three

separate extensions of time.  Plaintiffs' counsel consented to each one – and delayed filing this

motion even after those deadlines had expired – in the hopes of negotiating a settlement. Defendants could have easily delivered simple admissions or denials within that timeframe, but did not.

Plaintiffs' Requests to Admit are automatically deemed judicially admitted under Rule 36(a)(3) with no requirement for court intervention. *See American Tech. Corp. v. Mah*, 174 F.R.D. 687, 689 (D. Nev. 1997); see also *See Federal Trade Comm'n v. Medicor, LLC,* 217 F. Supp. 2d 1048, 1053 (C.D. Cal. 2002) (in ruling on summary judgment motion, district court deemed admitted requests for admissions to which defendants failed to respond, noting that failure to respond results in automatic admission, with no motion necessary).

Matters admitted in accordance with Rule 36, whether explicitly admitted or admitted by default, are <u>conclusively</u> <u>established</u> for purposes of the pending action. *See American Auto. Ass'n v. AAA Legal Clinic*, 930 F.2d 1117, 1120 (5th Cir. 1991) (conclusive effect of Rule 36 applies equally to those admissions made affirmatively and those established by default, even if matters admitted relate to material facts that defeat a party's claim). An admission under Rule 36 is therefore comparable to an admission in a pleading or a stipulation drafted by an attorney for use at trial, as opposed to an evidentiary admission of a party for use at trial; that is to say, as a matter conclusively established, the admissions are treated as judicial admissions, which are binding on both the court and the parties. *See* Fed. R. Civ. P. 36(b) advisory committee's note (1970); *Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n*, 465 F.3d 1102, 1112 (9th Cir. 2006) (court cannot ignore admissions even when presented with more credible evidence by party against whom admission operates). A matter that is deemed admitted <u>does</u> <u>not</u> require further proof. *Weva Oil Corp. v. Belco Petroleum Corp.*, 68 F.R.D. 663, 667 (N.D. W.

Va. 1975) (if there is failure to respond, requesting party is entitled to rely on admissions and no further proof is required).

All of Plaintiffs' Request to Admit are therefore deemed admitted and are conclusively established for purposes of this Adversary Proceeding.  These admissions are judicial admissions that are binding on Defendants and on the Court without the need for any further proof.

**B.    The Admissions Fully Satisfy All Factual and Legal Proofs Necessary for Entry of Judgment as to Liability and Nondischargeability**

Admissions may provide the basis for a motion for summary judgment.  See, e.g., *Universal City Studios Productions LLP v. Bigwood*, 441 F. Supp. 2d 185, 187 (D. Me. 2006) (motion for summary judgment may be premised on facts admitted because party failed to respond to request for admission).  A court may grant a motion for summary judgment based on an admission resulting from a party's failure to respond timely to the request for admission as long as the admission was properly served.  *See Freed v. Plastic Packaging Materials, Inc.*, 66 F.R.D. 550, 552 (E.D. Pa. 1975) (service of request for admissions is complete on mailing request under Fed R. Civ. P. 5(b), and granting of summary judgment on basis of unanswered requests is permissible).

The requests to admit satisfy all factual and legal proofs necessary for this Court to enter a judgment against Defendants and to deem such judgment nondischargeable under the Bankruptcy Code.  With respect to each aspect of Plaintiffs' Complaint, the requests to admit provide Defendants' admissions as follows:

1.    The Miller Debt and Term Agreement

(a)    The copy of the Miller Debt and Term Agreement attached to Plaintiffs' Discovery Requests is a true and accurate copy of such agreement.  See Requests to Admit #1.

(b)    Defendants did in fact enter into the Miller Solomon Modified Agreement. See Requests to Admit #6.

(c)    Defendants' signing the Miller Debt and Term Agreement constituted an acknowledgement that Defendants owe Plaintiffs $3,957,827 through July 31, 2001.  See Requests to Admit #7.

(d)    Defendants' are personal guarantors under the Miller Debt and Term Agreement.  See Requests to Admit #8.

(e)    Defendants' signing the Miller Debt and Term Agreement constituted Defendants' agreement to pay Plaintiffs $3,957,827 plus interest.  See Request to Admit #9.

(f)    At the time of signing the Miller Debt and Term Agreement, Defendants did not have the ability to pay Plaintiffs the sum of $3,957,827 plus interest.  See Request to Admit #10.

(g)    At the time of signing the Miller Debt and Term Agreement, Defendants did not intend to pay Plaintiffs the sum of $3,957,827 plus interest.  See Request to Admit #11.

(h)    Defendants have not paid Plaintiffs the amounts owed under the Miller Debt and Term Agreement or any portion thereof.  See Request to Admit #11 and 12.

(i)    At the time Defendants received loans from Plaintiffs under the Miller Debt and Term Agreement, Defendants knew or had reason to know that the source of some or all of these loans was Solomon's pension or IRAs.  See Request to Admit #

The admissions set forth above establish all facts necessary for this Court to find that: (1) Defendants are liable to Plaintiffs in an amount not less than $3,957,827 plus interest; (2) Defendants incurred this debt by way of false pretenses, false representation or actual fraud; (3) Defendants incurred this debt by use of a statement in writing (i) that was materially false, (ii) respecting the Defendants' financial condition, (iii) on which Plaintiffs relied, and (iv) that the Defendants caused to be made with the intent to deceive; and (4) this debt caused willful and malicious injury by Defendants to Plaintiffs.  Therefore, this Court should enter summary judgment in favor of Plaintiffs with respect to the Miller Debt and Term Agreement in an amount not less than $3,957,827 plus interest and, further, should hold such debt nondischargeable under sections 523(a)(2)(A), 523(a)(2)(B), and/or 523(a)(6) of the Bankruptcy Code.

2.    <u>The Miller Solomon Modified Agreement</u>

(a)    The copy of the Miller Solomon Modified Agreement attached to Plaintiffs' Discovery Requests is a true and accurate copy of such agreement.  See Requests to Admit #2.

(b)    Defendants did in fact enter into the Miller Solomon Modified Agreement.  See Requests to Admit #14.

(c)    Defendants' signing the Miller Solomon Modified Agreement constituted an acknowledgement that Defendants owe Plaintiffs $912,252 through July 31, 2001.  See Requests to Admit #15.

(d)    Defendants' signing the Miller Solomon Modified Agreement constituted Defendants' agreement to convey to Plaintiffs an interest or interests in real property located in the Governor's Collection.  See Requests to Admit #16.

(e)    At the time of signing the Miller Solomon Modified Agreement, Defendants did not have the ability to pay Plaintiffs the sum of $912,252.  See Request to Admit #17.

(f)    At the time of signing the Miller Solomon Modified Agreement, Defendants did not intend to pay Plaintiffs the sum of $912,252.  See Request to Admit #18.

(g)    At the time of signing the Miller Solomon Modified Agreement, Defendants did not have the ability to convey to Plaintiffs an interest or interests in real property located in the Governor's Collection.  See Request to Admit #19.

(h)    At the time of signing the Miller Solomon Modified Agreement, Defendants did not intend to convey to Plaintiffs an interest or interests in real property located in the Governor's Collection.  See Request to Admit #20.

(i)    Defendants have not paid Plaintiffs the amounts owed under the Miller Solomon Modified Agreement or any portion thereof.  See Request to Admit #21 and 22.

(j)    Defendants have not conveyed to Plaintiffs an interest in real property located in the Governor's Collection.  See Request to Admit #23.

The admissions set forth above establish all facts necessary for this Court to find that: (1)

Defendants are liable to Plaintiffs in an amount not less than $912,252; (2) Defendants incurred

this debt by way of false pretenses, false representation or actual fraud; (3) Defendants incurred

18

this debt by use of a statement in writing (i) that was materially false, (ii) respecting the Defendants' financial condition, (iii) on which Plaintiffs relied, and (iv) that the Defendants caused to be made with the intent to deceive; and (4) this debt caused willful and malicious injury by Defendants to Plaintiffs.  Therefore, this Court should enter summary judgment in favor of Plaintiffs with respect to the Miller Solomon Modified Agreement in an amount not less than $912,252 plus any applicable interest and, further, should hold such debt nondischargeable under sections 523(a)(2)(A), 523(a)(2)(B), and/or 523(a)(6) of the Bankruptcy Code.

    3.    <u>The Snider Payment Agreement</u>

    (a)    The copy of the Snider Payment Agreement attached to Plaintiffs' Discovery Requests is a true and accurate copy of such agreement.  See Requests to Admit #3.

    (b)    Defendants did in fact enter into the Snider Payment Agreement.  See Requests to Admit #30.

    (c)    Defendants verbally represented to Solomon that Solomon would not have to repay Charles Snider for any loans given by Charles Snider to Defendants or to any entity in which Defendants have or had an interest. See Request to Admit #27.

    (d)    Defendants acknowledge that Solomon obtained and personally guaranteed a loan from Charles Snider to Defendants or to any entity in which Defendants have or had an interest.  See Request to Admit #28.

    (e)    Defendants acknowledge that Charles Snider brought a lawsuit against Solomon seeking payment.  See Request to Admit #29.

    (f)    Defendants' signing the Snider Payment Agreement constituted Defendants' agreement to pay the amount due under the loan from Charles Snider.  See Request to Admit #31.

    (g)    At the time of signing the Snider Payment Agreement Defendants did not have the ability to pay  the amounts due under the loan from Charles Snider.  See Request to Admit #32.

    (h)    At the time of signing the Snider Payment Agreement Defendants did not intend to pay the amounts due under the loan from Charles Snider.  See Request to Admit #33.

Charles Snider ultimately obtained a judgment against Solomon in excess of $90,000. As a result, Solomon was left with no choice but to enter into a settlement agreement with Charles Snider whereby Solomon agreed to pay Charles Snider $98,279. The admissions set forth above establish all facts necessary for this Court to find that: (1) Defendants are liable to Plaintiffs in an amount not less than $98,279; (2) Defendants incurred this debt by way of false pretenses, false representation or actual fraud; (3) Defendants incurred this debt by use of a statement in writing (i) that was materially false, (ii) respecting the Defendants' financial condition, (iii) on which Plaintiffs relied, and (iv) that the Defendants caused to be made with the intent to deceive; and (4) this debt caused willful and malicious injury by Defendants to Plaintiffs. Therefore, this Court should enter summary judgment in favor of Plaintiffs with respect to the Snider Payment Agreement in an amount not less than $98,279 plus any applicable interest and, further, should hold such debt nondischargeable under sections 523(a)(2)(A), 523(a)(2)(B), and/or 523(a)(6) of the Bankruptcy Code.

4.    <u>Discharge of Mortgage on Defendants' Primary Residence</u>

(a)    Defendants agreed to pay Plaintiffs some or all of the proceeds from the sale of their residence in Grosse Pointe, MI if Plaintiffs discharged two mortgages on that residence. See Request to Admit #34.

(b)    When Plaintiffs agreed to execute two mortgage discharges on or about August 24, 2001, Defendants did not intend to pay Plaintiffs the proceeds from the sale of the Grosse Pointe residence. See Request to Admit #35.

(c)    Defendants have not paid Solomon any proceeds from the sale of your Grosse Pointe residence. See Request to Admit #36.

(d)    Defendants agreed to grant Plaintiffs a mortgage on their residence in Charlevoix, MI if Plaintiffs discharged two mortgages on that residence. See Request to Admit #37.

(e)    When Plaintiffs agreed to execute two mortgage discharges on or about August 24, 2001, Defendants did not intend to grant Plaintiffs a mortgage on their residence in Charlevoix, MI. See Request to Admit #38.

(f)     Defendants have not granted a mortgage on their residence in Charlevoix, MI.  See Request to Admit #39.

The admissions set forth above establish all facts necessary for this Court to find that: (1) Plaintiffs are granted a mortgage on Defendants' Charlevoix, MI residence; (2) Defendants incurred this liability by way of false pretenses, false representation or actual fraud; (3) Defendants incurred this liability by use of a statement in writing (i) that was materially false, (ii) respecting the Defendants' financial condition, (iii) on which Plaintiffs relied, and (iv) that the Defendants caused to be made with the intent to deceive; and (4) this liability caused willful and malicious injury by Defendants to Plaintiffs.  Therefore, this Court should enter summary judgment in favor of Plaintiffs granting Plaintiffs a mortgage on Defendants' Charlevoix, MI residence; and, further, should hold that such liability is nondischargeable in Defendants' bankruptcy case under sections 523(a)(2)(A), 523(a)(2)(B), and/or 523(a)(6) of the Bankruptcy Code.

5.     <u>Miller Solomon Consulting Agreement</u>

(a)     The copy of the Miller Solomon Consulting Agreement attached to Plaintiffs' Discovery Requests is a true and accurate copy of such agreement.  See Requests to Admit #4.

(b)     Defendants did in fact enter into the Miller Solomon Consulting Agreement.  See Requests to Admit #40.

(c)     Defendants' signing the Miller Solomon Consulting Agreement constituted Defendants' agreement to assign to Plaintiffs a 25% beneficial ownership interest in certain real estate ventures and in the entities formed to pursue these ventures.  See Requests to Admit #41.

(d)     At the time of signing the Miller Solomon Consulting Agreement, Defendants did not intend to convey to Plaintiffs any ownership interest in real estate ventures or entities formed to pursue such ventures.  See Requests to Admit #42.

(e)     Defendants have not assigned to Plaintiffs an interest in any real estate venture or property or an interest in any entity formed to pursue such real estate ventures.  See Requests to Admit #43 and 44.

The admissions set forth above establish all facts necessary for this Court to find that: (1) Defendants are liable to Plaintiffs in an amount equal to the value of the consulting services performed by Solomon for Defendants based upon the terms of the Miller Solomon Consulting Agreement; (2) Defendants incurred this debt by way of false pretenses, false representation or actual fraud; (3) Defendants incurred this debt by use of a statement in writing (i) that was materially false, (ii) respecting the Defendants' financial condition, (iii) on which Plaintiffs relied, and (iv) that the Defendants caused to be made with the intent to deceive; and (4) this debt caused willful and malicious injury by Defendants to Plaintiffs.  Therefore, this Court should enter summary judgment in favor of Plaintiffs in an amount not less than the value of the consulting services performed by Solomon for Defendants based upon the terms of the Miller Solomon Consulting Agreement; and, further, should hold that such debt is nondischargeable in Defendants' bankruptcy case under sections 523(a)(2)(A), 523(a)(2)(B), and/or 523(a)(6) of the Bankruptcy Code.

## V.    Calculation of Liability

Under the Miller Debt and Term Agreement, Defendants agreed that, beginning on August 1, 2001, all outstanding debt owed to Plaintiffs would bear interest at the rate of 12% in the event that Defendants made the initial minimum payment by July 31, 2001, or at the rate of 22% in the event that, and for as long as, Defendants were in default with respect to that initial minimum payment.  See Miller Debt and Term Agreement.  Under the express terms of the Miller Debt and Term Agreement, Plaintiffs are, at a minimum, entitled to the following from Defendants:

(a)  $3,957,827 owing to Plaintiffs through July 31, 2001;[2] and

(b)  Interest, accruing from August 1, 2001, to the present, on all outstanding debt owed to Plaintiffs at the in-default rate of 22%.[3]

Thus, pursuant to the Miller Debt and Term Agreement, Defendants currently owes Plaintiffs at least $8,899,890.60, which amount consists of the $3,957,827 owing to Plaintiffs through July 31, 2001, and the 22% in-default interest accruing on said amount from August 1, 2001, to March 12, 2008.[4]

Additionally, Defendants have admitted liability under the Miller Solomon Modified Agreement in an amount of $912,252 and under the Snider Payment Agreement in the amount of $98,279.  Therefore, Defendants total minimum liability to Plaintiffs for which Plaintiffs seek entry of summary judgment is $9,910,421.60.

## VI.    Conclusion

Plaintiffs' Requests to Admit, which are all deemed admitted, (1) are conclusively established for purposes of this Adversary Proceeding and, as judicial admissions, are binding on Defendants and on the Court without the need for any further proof; and (2) fully satisfy all factual or legal proofs necessary for this Court to enter a judgment in Plaintiffs' favor as to liability and to enter an order holding such judgment and the underlying indebtedness nondischargeable under section 523 of the Bankruptcy Code.

---

[2]  As the Miller Debt and Term Agreement makes clear, this figure consists of: 1) both the principal and interest on certain loans through July 31, 2001; and 2) only the principal on certain other loans for which Solomon agreed to accept three real estate lots in lieu of interest accruing through July 31, 2001, on such loans.

[3]  The Miller Debt and Term Agreement also entitles Solomon to three lots of his choosing from the Governor's Collection real estate development in Okemos, Michigan, or from any future real estate project undertaken by any Defendant.

[4]  Such amount has been entered as a default judgment in favor of Plaintiffs against North American Equities in Civil Action No. 07-081232-CK in the Circuit Court for the County of Oakland, State of Michigan.  See **Exhibit M** attached.

Because no issues of material fact or law exist, Plaintiffs are entitled to summary judgment.

ACCORDINGLY, Plaintiffs respectfully request that this Court:

1.      grant Plaintiffs' Motion for Summary Judgment;

2.      enter judgment in favor of Plaintiffs and against Defendants, jointly and severally, in an amount of $9,910,421.60, as has been detailed above;

3.      grant Plaintiffs a mortgage on Defendants' Charlevoix, MI residence;

4.      hold all of the Defendants' indebtedness to Plaintiffs and the judgment entered in this action non-dischargeable under 11 U.S.C. § 523(a)(2)(A), (B) and/or (D); and

5.      grant Plaintiffs such additional relief as the Court deems just and proper.


Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

Dated: September 25, 2009      By:____/s/ Joseph R. Sgroi_____
                                  Lara Fetsco Phillip (P67353)
                                  Joseph R. Sgroi. (P68666)
                                  2290 First National Building
                                  660 Woodward Avenue
                                  Detroit, MI 48226-3506
                                  (313) 465-7570
                                  jsgroi@honigman.com

                                     and

                                  Susan Jill Rice (P63035)
                                  Brandt Fisher Alward & Roy, P.C.
                                  1241 East Eighth Street
                                  PO Box 5817
                                  Traverse City, MI 49696-5817
                                  (231) 941-9660 ext. 129
                                  jrice@bfarlaw.com

DETROIT.3866777.1